1

2

3

4                          UNITED STATES DISTRICT COURT

5                            EASTERN DISTRICT OF CALIFORNIA

6

7

8

9
      ALFRED L. BROOKS,                    )        1:08-cv-01156-LJO-BAK-SMS HC
10                                         )
                     Petitioner,           )        FINDINGS AND RECOMMENDATIONS TO
11                                         )        GRANT RESPONDENT'S MOTION TO
                                           )        DISMISS THE PETITION FOR WRIT OF
12                                         )        HABEAS CORPUS   (Doc. 12)
                                           )
13          v.                             )        ORDER DIRECTING OBJECTIONS TO BE
                                           )        FILED WITHIN TWENTY  DAYS
14    JAMES YATES, Warden,                 )
                                           )
15                   Respondent.           )
      _____)
16

17          Petitioner is a state prisoner proceeding pro se on a petition for writ of habeas corpus

18    pursuant to 28 U.S.C.  §  2254.

19          The instant petition was filed on August 3, 2008.  (Doc. 1).[1]  Petitioner is serving a sentence

20    of fifteen years to life as a result of a 1988 conviction in the Superior Court of the County of El

21    Dorado for second degree murder.  (Doc. 1, p. 1).   The conviction resulted from a guilty plea that

22    _____

23          [1]In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is
      deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court
      clerk.  Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988).  The rule is premised on the pro se prisoner's
24    mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be
      adverse to his."  Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382.  The
25    Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the
      AEDPA.  Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), amended May 23, 2001, vacated and remanded on
26    other grounds sub nom. Carey v. Saffold, 536 U.S. 214, 226 (2002). The date the petition is signed may be considered the
      earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule.  Jenkins v.
27    Johnson, 330 F.3d 1146, 1149 n. 2 (9th cir. 2003).  Accordingly, for Petitioner's state petitions, as well as for the instant
      petition, the Court will consider the date of signing of any petition (or the date of signing of the proof of service if no
28    signature appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule
      for calculating the running of the statute of limitation. In this instance, that date is August 3, 2008.

                                                    1

1   Petitioner did not appeal.  (Id.).  Petitioner alleges that his continued incarceration violates federal

2   due process and equal protection because his 1988 plea agreement to a sentence of fifteen years to

3   life was a contractual agreement that has been violated by Respondent's incarceration of Petitioner

4   beyond the fifteen year minimum plus applicable credits.  (Doc. 1, pp. 4-6).  On October 20, 2008,

5   the Court ordered Respondent to file a responsive pleading.  (Doc. 7).  On December 19, 2008,

6   Respondent filed the instant motion to dismiss, contending that the petition is untimely, the claims

7   are unexhausted, and the claims were rejected in an earlier federal petition in this Court, making the

8   instant petition successive.  (Doc. 12).  To date, Petitioner has not responded to or opposed the

9   motion to dismiss.

10   **DISCUSSION**

11   A.  Procedural Grounds for Motion to Dismiss

12   Respondent has filed a Motion to Dismiss the petition as being a second or successive

13   petition.  Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

14   petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the

15   petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section

16   2254 Cases.

17   The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer

18   if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

19   state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule

20   4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874

21   F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for

22   state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

23   Thus, a Respondent can file a Motion to Dismiss after the court orders a response, and the Court

24   should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

25   In this case, Respondent's Motion to Dismiss is based on a violation of  28 U.S.C. §

26   2244(b)(3)(A), as being a second or successive petition, upon a violation of 28 U.S.C. § 2244(d)(1)'s

27   one year limitation period, and upon Petitioner's failure to exhaust his state court remedies.  Because

28   Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure

2

1   to exhaust state remedies or for state procedural default and because Respondent has not yet filed a

2   formal Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority

3   under Rule 4.

4         B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

5         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

6   1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

7   corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063

8   (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586

9   (1997).   The instant petition was filed on August 3,  2008, and thus, it is subject to the provisions of

10  the AEDPA.

11        The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal

12  petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d)

13  reads:

14        (1)  A 1-year period of limitation shall apply to an application for a writ of habeas
    corpus by a person in custody pursuant to the judgment of a State court.  The
15  limitation period shall run from the latest of –

16           (A) the date on which the judgment became final by the conclusion of direct
    review or the expiration of the time for seeking such review;
17

18           (B) the date on which the impediment to filing an application created by
    State action in violation of the Constitution or laws of the United States is removed, if
    the applicant was prevented from filing by such State action;
19

20           (C) the date on which the constitutional right asserted was initially recognized by
    the Supreme Court, if the right has been newly recognized by the Supreme Court and made
    retroactively applicable to cases on collateral review; or
21

22           (D) the date on which the factual predicate of the claim or claims presented
    could have been discovered through the exercise of due diligence.

23        (2) The time during which a properly filed application for State post-conviction or
    other collateral review with respect to the pertinent judgment or claim is pending shall
24  not be counted toward any period of limitation under this subsection.

25  28 U.S.C. § 2244(d).

26        Here, Petitioner challenges his continued incarceration by Respondent as a violation of his

27  original 1988 plea agreement in which he pleaded guilty in exchange for a sentence of fifteen years

28  to life.  Petitioner contends that "the term 'life' only referred to parole given petitioner received a

1   parole violation within the initial five years of parole, otherwise the maximum term was to be fifteen

2   years actual confinement." (Id., p. 5).

3        Here, Petitioner did not file a direct appeal from his plea of guilty.  California state law

4   governs the period within which prisoners have to file an appeal and, in turn, that law governs the

5   date of finality of convictions.  See, e.g., Mendoza v. Carey, 449 F.3d 1065, 1067 (9th Cir. 2006);

6   Lewis v. Mitchell, 173 F.Supp.2d 1057, 1060 (C.D. Cal. 2001)(California conviction becomes final

7   60 days after the superior court proceedings have concluded, citing prior Rule of Court, Rule 31(d)).

8   Pursuant to California Rules of Court, Rule 8.308(a), a criminal defendant convicted of a felony

9   must file his notice of appeal within sixty days of the rendition of judgment.  See People v. Mendez,

10  19 Cal.4th 1084, 1086, 969 P.2d 146, 147 (1999)(citing prior Rule of Court, Rule 31(d)).  Because

11  Petitioner did not file a notice of appeal from his November 15, 1988 conviction, his direct review

12  would have concluded on January 14, 1989, when the sixty-day period for filing a notice of appeal

13  expired.

14       In most cases, the limitation period begins running on the date that the petitioner's direct

15  review became final.  The AEDPA, however, is silent on how the one year limitation period affects

16  cases where direct review concluded *before* the enactment of the AEDPA.  The Ninth Circuit has

17  held that if a petitioner whose review ended before the enactment of the AEDPA filed a habeas

18  corpus petition within one year of the AEDPA's enactment, the Court should not dismiss the petition

19  pursuant to § 2244(d)(1).  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283,1286 (9th

20  Cir.), *cert. denied*, 118 S.Ct. 899 (1998);  Calderon v. United States Dist. Court (Kelly), 127 F.3d

21  782, 784 (9th Cir.), *cert. denied*, 118 S.Ct. 1395 (1998).   In such circumstances, the limitations

22  period would begin to run on April 25, 1996.  Patterson v. Stewart, 2001 WL 575465 (9th Cir. Ariz.).

23       Under the foregoing analysis, Petitioner's one-year period commenced on April 25, 1996

24  because his direct review became final long before the enactment of the AEDPA.  Accordingly, the

25  one-year period expired 365 days later on April 25, 1997.  Since the instant petition was not filed

26  until August 3, 2008, it is almost eleven years late.

27       This exact issue was decided against Petitioner in case number 2:03-cv-0718-GEB-GGH,

28  filed on February 4, 2003 in the U.S. District Court for the Northern District of California, and

1    transferred to the Sacramento Division of this Court on April 8, 2003, in which Petitioner raised the

2    virtually identical claim, i.e.,  that his 1988 plea agreement was being breached by his continued

3    incarceration.  (Doc. 12, Ex. 1).  That petition was dismissed as untimely under the AEDPA on

4    December 14, 2004.  (Doc. 12, Ex. 2).  In so doing, the district court concluded that because

5    Petitioner's direct review became final before the enactment of the AEDPA, the one-year period

6    expired on April 24, 1997.  (Id.).  Inasmuch as Petitioner did not file the petition in that case until

7    2003, the district court had little difficulty in concluding that the petition was untimely.  (Id.).

8           Petitioner then appealed the dismissal on untimeliness grounds to the U.S. Court of Appeals

9    for the Ninth Circuit in case number 06-15183, and on December 13, 2006, the Ninth Circuit

10   affirmed the dismissal as follows:

11         Brook s contends that his "abridgment of the plea agreement" claim is not barred because he
           only learned of the factual predicate of this claim just before filing his federal habeas petition
12         in 2003.  Even assuming that this contention is properly before us, it is without merit.  The
           factual predicate of Brooks' breach of plea agreement claim was reasonably discoverable
13         years ago through the exercise of due diligence.

14   (Doc. 12, Ex. 4; Brooks v. Calderon, 212 Fed. Appx. 636, 2006 WL 3698229 (9th Cir. Dec. 13,

15   2006)).[2]

16          The Ninth Circuit's rejection of Petitioner's claim as untimely is res judicata in these

17   proceedings and binding on this Court.  Res judicata, or claim preclusion, as it is commonly known,

18   bars re-litigation in a subsequent action of any claims that were or could have been raised in the

19   earlier action.  Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  The res judicata

20   doctrine applies when, as here, there is: (1) an identity of claims; (2) a final judgment on the merits;

21   and (3) an identity or privity between the parties.  Western Radio Services, Inc. v. Glickman, 123

22   F.3d 1189, 1192 (9th Cir. 1997).  Issue preclusion bars re-litigation of issues adjudicated and essential

23   to the final judgment of earlier litigation between the parties.  Dodd v. Hood River County, 136 F.3d

24   1219, 1224-1225 (9th Cir. 1999); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1520

25   (9th Cir. 1987).  The purpose behind both issue preclusion and claim preclusion is to prevent multiple

26

27

28         [2]The Court cites to both the exhibit attached to the motion to dismiss and to the Westlaw internet designation for
     the Ninth Circuit ruling because the exhibit attached to the motion to dismiss is missing page 2 of the Ninth Circuit's decision.

1    lawsuits and to enable parties to rely on the finality of adjudications.  Allen v. McCurry, 449 U.S. 90,

2    94 (1980).  The prior claim satisfies all requirements for application of the res judicata doctrine, i.e.,

3    there is an identity of claims, the prior ruling is a final judgment on the merits of the timeliness

4    claim, there is an identity or privity between the parties, i.e., Petitioner and Respondent.  Thus, the

5    Ninth Circuit's holding that Petitioner could have discovered the factual predicate to his claim "years

6    ago" with the exercise of due diligence is res judicata and binding on this Court.  Accordingly, the

7    Court finds that the petition is untimely and should be dismissed.

8            C.  The Petition Is A Second Or Successive Petition.

9            Respondent also contends that the petition is successive and should be dismissed.  The Court

10   agrees.

11           The AEDPA amendments altered both the procedural and substantive aspects of federal

12   habeas law.  See In re Minarik, 166 F.3d 591, 599-600 (3rd Cir.1999) (considering procedural and

13   substantive retroactivity separately);  Pratt v. United States, 129 F.3d 54, 57 (1st Cir.1997)

14   (observing AEDPA contains both aspects).  Prior to the enactment of the AEDPA, federal courts

15   denied a second or successive petition if the Government could demonstrate that the petition

16   constituted an abuse of the writ.  See McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454 (1991).

17   Courts excused an abuse of the writ only if:  (1) the applicant could establish cause and prejudice--

18   i.e., that "some objective factor external to the defense impeded counsel's efforts" to raise the claim

19   earlier and that "actual prejudice result[ed] from the errors of which he complain[ed,]"  id. at 493-94,

20   111 S.Ct. 1454 (internal quotation marks and citations omitted); or (2) the applicant could

21   demonstrate that "a fundamental miscarriage of justice would result from a failure to entertain the

22   claim."  Id.  The AEDPA, however, replaced the abuse-of-the writ doctrine articulated in McCleskey.

23           Under AEDPA's new "gate-keeping" provisions, an applicant seeking to file a second or

24   successive petition must obtain from the appropriate court of appeals an order authorizing the district

25   court to consider the application.  28 U.S.C. § 2244(b)(3)(A).   By filing a second and successive

26   petition raising the same issue without first obtaining permission of the Ninth Circuit, Petitioner has

27   violated this fundamental gate-keeping provision of the AEDPA.

28           Respondent's motion to dismiss establishes that Petitioner filed a federal petition raising the

                                                     6

same claim as that contained in the instant petition on February 4, 2003, said petition was transferred

to this Court's Sacramento Division on April 8, 2003, and the petition was re-designated as case

number 2:03-cv-00718-GEB-GGH.   As discussed above, the petition was subsequently dismissed by

the district court on timeliness grounds and the dismissal was affirmed by the Ninth Circuit.

A review of the two petitions indicates that the claim Petitioner now raises regarding the

breach of his 1988 plea agree is *substantively* the same as the one presented in case number 2:03-cv-

00718-GEB-GGH.   Respondent correctly points out in the motion to dismiss that the minor

linguistic differences between the 2003 claim and the instant claim are cosmetic rather than

substantive:

> Brooks again argues that when he entered his plea, he believed that he would serve a
> maximum term of 15 years in prison, absent any possible conduct credit reductions.  He
> points to the same state actors who allegedly coerced him into the plea, as the same
> individuals who failed to disclose the true nature of his plea.  Brooks recycles his previous
> argument that the Board altered his plea agreement.  He again argues that the Board's actions
> altered his sentence into an indeterminate term and the Board failed to comply with the terms
> of his plea, i.e., he would only be subject to a maximum term of 15 years or less with the
> benefit of credits.

(Doc. 12, p. 5)(citations omitted).

Thus, the instant petition is a "second or successive" petition within the meaning of the

AEDPA and can only be filed by permission of the Ninth Circuit.  Since Petitioner has not

contended, let alone proven, that he obtained the permission of the Ninth Circuit before filing the

instant petition, it must be dismissed.

D.  Exhaustion of State Remedies

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a

petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The

exhaustion doctrine is based on comity to the state court and gives the state court the initial

opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501

U.S. 722, 731 (1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158,

1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a

full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v.

1    _Henry_, 513 U.S. 364, 365 (1995); _Picard v. Connor_, 404 U.S. 270, 276 (1971); _Johnson v. Zenon_, 88

2  F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full

3  and fair opportunity to hear a claim if the petitioner has presented the highest state court with the

4  claim's factual and legal basis. _Duncan_, 513 U.S. at 365 (legal basis); _Kenney v. Tamayo-Reyes_, 504

5  U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

6         Additionally, the petitioner must have specifically told the state court that he was raising a

7  federal constitutional claim.  _Duncan_, 513 U.S. at 365-66; _Lyons v. Crawford_, 232 F.3d 666, 669

8  (9th Cir.2000), _amended_, 247 F.3d 904 (2001); _Hiivala v. Wood_, 195 F.3d 1098, 1106 (9th Cir.1999);

9  _Keating v. Hood_, 133 F.3d 1240, 1241 (9th Cir.1998).  In _Duncan_, the United States Supreme Court

10 reiterated the rule as follows:

11     In _Picard v. Connor_, 404 U.S. 270, 275 . . . (1971), we said that exhaustion
   of state remedies requires that petitioners "fairly presen[t]" federal claims to the

12 state courts in order to give the State the "'opportunity to pass upon and correct
   alleged violations of the prisoners' federal rights'" (some internal quotation marks

13 omitted). If state courts are to be given the opportunity to correct alleged violations
   of prisoners' federal rights, they must surely be alerted to the fact that the prisoners

14 are asserting claims under the United States Constitution. If a habeas petitioner
   wishes to claim that an evidentiary ruling at a state court trial denied him the due

15 process of law guaranteed by the Fourteenth Amendment, he must say so, not only
   in federal court, but in state court.

16
   _Duncan_, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:

17

18     Our rule is that a state prisoner has not "fairly presented" (and thus
   exhausted) his federal claims in state court _unless he specifically indicated to_

19 _that court that those claims were based on federal law._ See _Shumway v. Payne_,
   223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in

20 _Duncan_, this court has held that the _petitioner must make the federal basis of the_
   _claim explicit either by citing federal law or the decisions of federal courts, even_

21 _if the federal basis is "self-evident,"_ _Gatlin v. Madding_, 189 F.3d 882, 889
   (9th Cir. 1999) (citing _Anderson v. Harless_, 459 U.S. 4, 7 . . . (1982), or the

22 underlying claim would be decided under state law on the same considerations
   that would control resolution of the claim on federal grounds. _Hiivala v. Wood_,

23 195 F3d 1098, 1106-07 (9th Cir. 1999); _Johnson v. Zenon_, 88 F.3d 828, 830-31
   (9th Cir. 1996); . . . .

24     In _Johnson_, we explained that the petitioner must alert the state court to
   the fact that the relevant claim is a federal one without regard to how similar the

25 state and federal standards for reviewing the claim may be or how obvious the
   violation of federal law is.

26 _Lyons v. Crawford_, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

27        Along with the motion to dismiss, Respondent has lodged documents with the Court that

28 establish that Petitioner filed state habeas petitions in the Superior Court for El Dorado County, in

1  the Court of Appeal, Third Appellate District, and in the California Supreme Court.  (Doc. 12, Exs.

2  5, 6, 7, 8, 9 & 10).  The latter denied the petition citing People v. Duvall, 9 Cal. 4th 464, 474 (1995).

3  (Doc. 12, Ex. 9).

4      Under California law, a citation to Duvall indicates that a petitioner has failed to state his

5  claim with sufficient particularity for the state court to examine the merits of the claim, and/or has

6  failed to "include copies of reasonably available documentary evidence supporting the claim,

7  including pertinent portions of trial transcripts and affidavits or declarations."  Duvall, 9 Cal.4th at

8  474.

9      While conceding that Petitioner included the instant claim in his action before the California

10  Supreme Court,  Respondent contends that Petitioner's state court remedies have not been exhausted

11  because the state supreme court denied the petition on procedural grounds as to the claim raised now

12  in the instant petition, i.e., by the citation to Duvall.   (Doc. 12, p. 7).   Respondent reasons that

13  because the denial by the California Supreme Court was on a procedural defect, not on the merits,

14  Petitioner has not exhausted his state remedies and therefore the petition should be dismissed.  The

15  Court agrees.

16      In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit considered a

17  state petition denied with a citation to In re Swain, 34 Cal.2d 300 (1949).  Like Duvall, a citation to

18  Swain stands for the proposition that a petitioner has failed to state his claim with sufficient

19  particularity.  In Kim, the Ninth Circuit found that the Swain citation indicated that the claims were

20  unexhausted because their pleadings defects, i.e., lack of particularity could be cured in a renewed

21  petition.  Kim, 799 F.2d at 1319.

22      However, in Kim, the Ninth Circuit also stated that it was "incumbent" on the district court,

23  in determining whether the federal standard of "fair presentation" of a claim to the state courts had

24  been met, to independently examine Kim's petition to the California Supreme Court.  Id. at 1320.

25  "The mere recitation of In re Swain does not preclude such review."  Id.  Indeed, the Ninth Circuit

26  has held that where a prisoner proceeding pro se is unable to meet the state rule that his claims be

27  pleaded with particularity, he may be excused from complying with it.  Harmon v. Ryan, 959 F.2d

28  1457, 1462 (9th Cir. 1992)(citing Kim, 799 F.2d at 1321).  "Fair presentation" requires only that the

1  claims be pleaded with as much particularity as is practicable.  Kim, 799 F.2d at 1320.

2      Because Swain and Duvall stand for the same proposition, and applying the principles set

3  forth in Kim, this Court must review Petitioner's habeas petition filed in the California Supreme

4  Court to determine whether that claim was "fairly presented" under federal exhaustion standards.

5      According to the exhibits filed by Respondent, which include the petition filed in the

6  California Supreme Court, Petitioner contended in that petition that he had entered into a contractual

7  plea agreement with the prosecutor on 1988, that the attorneys and trial judge "expounded the terms

8  and ratified them on behalf of the state of California," and that Petitioner was "led to believe that he

9  was entering a contractual agreement of fifteen years to life and that the term life only referred to

10  parole given petitioner received a parole violation within the initial five years of parole, otherwise

11  the maximum term was to be fifteen years with available half-time credits."  (Doc. 12, Ex. 9, p. 3).

12      Attached to the exhibit are various documents, including, inter alia, one page from a

13  transcript of Petitioner's guilty plea, two pages from the transcript of Petitioner's January 10, 2007

14  parole eligibility hearing, the abstract of judgment, and various correspondence between the Board of

15  Parole Hearings, Petitioner, and the Department of Corrections and Rehabilitation regarding

16  Petitioner's 2007 parole hearing.   (Doc. 12, Ex. 9, attached exhibits).  Nothing in the underlying

17  facts alleged by Petitioner, or in the attached documents, provides any factual basis for the state

18  supreme court to address the issue of whether Petitioner's incarceration violated his 1988 plea

19  agreement.  The actual plea agreement is not included in full in the state petition, there are no

20  declarations from Petitioner's attorneys supporting Petitioner's claim regarding the terms of the plea

21  agreement, and the relevant  trial court transcripts were not provided to the state high court.

22  Moreover, Petitioner's own allegation that he understood the plea agreement to be for only fifteen

23  years' incarceration, unsupported by any other allegations regarding why Petitioner interpreted

24  "fifteen years to life" in such a manner, is, standing alone, insufficient to permit the California

25  Supreme Court to address the issue on its merits.  In short, the California Supreme Court was not

26  provided with sufficient evidentiary detail or factual pleadings on which to address the merits of

27  Petitioner's claim that the 1988 plea agreement had been breached.  Accordingly, this Court finds

28  that Petitioner did not "fairly present" the claim to the California Supreme Court.  Kim, 799 F.2d at

1319.  Thus, it has not been exhausted.

Moreover, it bears emphasis that the California Supreme Court's citation to <u>Duvall</u> did not foreclose Petitioner from re-filing his petition in the California Supreme Court along with additional information, documents, or more specific pleadings that would have permitted that court to address the issue on the merits, thereby exhausting Petitioner's claims.  <u>Kim</u>, 799 F.2d at 1319.  Petitioner, however, failed to follow this course.   Accordingly, the Court concludes that Petitioner did not exhaust his claim in the California Supreme Court, and thus the petition is unexhausted and must be dismissed.

### **RECOMMENDATION**

Accordingly, for all of these reasons, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss (Doc. 12), be GRANTED and that the petition for writ of habeas corpus (Doc. 1), be DISMISSED as untimely,  successive, and for Petitioner's failure to fully exhaust his state court remedies.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

1

2

3      _____The Ninth Circuit has held that a district court may raise the statute of limitations *sua sponte*

4   and dismiss the petition on those grounds.  Herbst v. Cook, 260 F.3d 1039, 1042-44 (9th Cir. 2001)

5   (indicating that once a petitioner is given adequate notice and opportunity to respond to allegations

6   that his petition is subject to dismissal pursuant to AEDPA's statute of limitations, petitioner has the

7   burden of providing an adequate response).

8      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

9   1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

10  corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063

11  (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586

12  (1997).  The instant petition was filed on March 21, 2006; thus, it is subject to the provisions of the

13  AEDPA.

14     The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal

15  petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d)

16  reads:

17          (1)  A 1-year period of limitation shall apply to an application for a writ of habeas
           corpus by a person in custody pursuant to the judgment of a State court.  The
18         limitation period shall run from the latest of –

19             (A) the date on which the judgment became final by the conclusion of direct
              review or the expiration of the time for seeking such review;
20
              (B) the date on which the impediment to filing an application created by
21         State action in violation of the Constitution or laws of the United States is removed, if
           the applicant was prevented from filing by such State action;
22
              (C) the date on which the constitutional right asserted was initially recognized by
23         the Supreme Court, if the right has been newly recognized by the Supreme Court and made
           retroactively applicable to cases on collateral review; or
24
              (D) the date on which the factual predicate of the claim or claims presented
25         could have been discovered through the exercise of due diligence.

26          (2) The time during which a properly filed application for State post-conviction or
           other collateral review with respect to the pertinent judgment or claim is pending shall
27         not be counted toward any period of limitation under this subsection.

28

1   28 U.S.C. § 2244(d).

2        Here, Petitioner asserts that he was convicted on September 11, 1998.  In the documents

3   provided in Petitioner's response to the Order to Show Cause, it appears that he did file a direct

4   appeal from his conviction, which concluded with the California Supreme Court's denial of his

5   Petition for Review on February 23, 2000.[3]  Thus, direct review would conclude on May 23, 2000,

6   when the ninety day period for seeking review in the United States Supreme Court expired.  Barefoot

7   v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v.

8   Bowersox, 159 F.3d 345, 347 (8th Cir.1998).  Petitioner would have one year from May 23, 2000, or

9   until May 23, 2001, absent applicable tolling, in which to file his federal petition for writ of habeas

10  corpus.   The instant case was filed on October 16, 2006, over five years after the statute of

11  limitations would have expired.  Thus, unless entitled to applicable tolling, the petition is untimely.

12       Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

13  for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

14  pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2).  See

15  Carey v. Saffold, 536 U.S. 214 (2002) (the Court held that a petitioner is normally entitled to one

16  "full round" of collateral review in state court without federal interference.  While the "full round" is

17  properly in progress, the AEDPA's one-year statute is tolled.).   Welch v. Carey, 350 F.3d 1079 (9th

18  Cir. 2003) cert. denied by Welch v. Carey, 2004 U.S. LEXIS 3930 (June 1, 2004).

19       Petitioner apparently filed state habeas proceedings at each level of the California courts.

20  Petitioner's documents indicate that he filed a Superior Court petition on January 18, 2001 that was

21

22       [3]Although Petitioner's response to the Order to Show Cause did indicate that he had filed a direct appeal with the
    California Court of Appeal, Fifth Appellate District ("5th DCA"), in case no. F031856, and that he had filed a Petition for
23  Review with the California Supreme Court, Petitioner's documentation did not indicate the date on which the state supreme
    court denied his Petition for Review.  The court may take notice of facts that are capable of accurate and ready determination
24  by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso,
    989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be
25  questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9
    (9th Cir. 1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see
26  also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d
    736, 738 (6th. Cir. 1980). As such, the internet website for the California Courts, containing the court system's records for
27  filings in the Court of Appeal and the California Supreme Court are subject to judicial notice.  Accessing that state court
    internet site indicates that the Petition for Review in case no. F031856 was filed on January 20, 2000 and denied by the
28  California Supreme Court on February 23, 2000.

1   denied on January 29, 2001, thus entitling him to eleven days of statutory tolling.  On March 14,

2   2001, he filed a state petition in the 5th DCA that was denied on March 29, 2001, thus providing an

3   additional fifteen days of statutory tolling.  He also mailed a petition to the California Supreme Court

4   on July 20, 2001 that was denied on December 19, 2001, thus entitled Petitioner to 152 days of

5   statutory tolling.  The consequence of this first "round" of state habeas petitions was to toll the

6   running of the one-year limitation period by a total of 178 days.  Adding those 178 tolled days to the

7   previous deadline of May 23, 2001, results in a new AEDPA deadline of November 17, 2001.

8          Petitioner alleges that he filed a second round of state habeas petitions more recently.  His

9   Superior Court petition was denied on November 29, 2005.  His petition in the Fifth Appellate

10  District was filed on August 24, 2005 and denied on September 15, 2005, and his petition in the

11  California Supreme Court was filed on September 29, 2005 and denied on July 26, 2006.  Assuming,

12  arguendo, that all three petitions were properly filed, Petitioner would then be entitled to statutory

13  tolling for the pendency of those three petitions.  The last petition was denied on July 26, 2006, the

14  date on which statutory tolling would have expired.  However, Petitioner does not indicate when he

15  filed the first petition in the Superior Court, the date on which statutory tolling would have begun.

16  Thus, the Court is unable to determine the amount of tolling to which Petitioner would be entitled

17  under the AEDPA.  It bears noting, however, that, based on the information provided by Petitioner in

18  the petition, he would necessarily have had to have filed the Superior Court habeas petition prior to

19  November 17, 2001, in order to make the instant petition timely.  While it seems incredible that the

20  Superior Court of Stanislaus County would have deliberated over a habeas petition for six years, the

21  Court, reluctant to recommend outright dismissal of the case without affording Petitioner an

22  opportunity to provide additional information that may affect the Court's analysis of the timeliness of

23  the petition, afforded Petitioner the chance to clarify this situation by filing additional documentation

24  to substantiate his entitlement to additional statutory tolling.  His documentation included in the

25  response did not indicate when this second superior court habeas petition was filed.  In light of

26  Petitioner's failure to establish his entitlement to statutory tolling, the Court finds that the second

27  "round" of state habeas petitions was commenced subsequent to the expiration of the one-year

28  AEDPA period on November 17, 2001.

A petitioner is not entitled to statutory tolling for state petitions filed after the expiration of the one-year period.  Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000); see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)(same); Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003)("section 2244(d) does not permit the re-initiation of the limitations period that has ended before the state petition was filed."); Jackson v. Dormire, 180 F.3d 919, 920 (8th Cir. 1999) (petitioner fails to exhaust claims raised in state habeas corpus filed after expiration of the one-year limitations period).   Accordingly, Petitioner would not, in any event, be entitled to statutory tolling for his second round of habeas petitions.  Therefore, the petition is untimely and should be dismissed.

Moreover, it appears that Petitioner has previously raised in this Court the identical issue he is now raising in this petition.  In his response to the Order to Show Cause, Petitioner provided documentation regarding an earlier federal petition filed in this Court.  In case no. 1:02-cv-5137-HGB, filed on January 18, 2002, Petitioner contended, inter alia, in Ground Three of that petition that his sentence was illegal because the gun-use enhancement was also an element of the offense and because the aggravated sentence was illegally imposed.   On August 5, 2002, this Court denied that first petition on the merits and entered judgment against Petitioner, holding that Ground Three did not state a federal habeas claim but instead merely raised an issue of state law.  (Doc. 17).

Here, Petitioner describes his claim as follows: "The dual use of enhancement fact as an aggravating factor; the court used the muti-shots [sic] from gun to aggravate the manslaughter conviction for sentencing and then use same shooting to give 12022.5 enhancement personal use of firearm, when aggravating and mitigating must outweigh one another and do not."  (Doc. 1, p. 6). This is virtually identical to Ground Three in case no. 1:02-cv-5137-HGB, which was rejected by this Court on the merits in 2002.

Petitioner apparently has the misguided notion that when his claims are rejected by this Court, he may simply repackage and re-present them to another judge of this Court until he obtains the relief he seeks.  This is not the case.

As noted above, the instant Petition was filed after the enactment of the AEDPA.  The AEDPA amendments altered both the procedural and substantive aspects of federal habeas law.  See

15

1    In re Minarik, 166 F.3d 591, 599-600 (3rd Cir.1999) (considering procedural and substantive

2    retroactivity separately);  Pratt v. United States, 129 F.3d 54, 57 (1st Cir.1997) (observing AEDPA

3    contains both aspects).  Prior to the enactment of the AEDPA, federal courts denied a second or

4    successive petition if the Government could demonstrate that the petition constituted an abuse of the

5    writ.  See McCleskey v. Zant, 499 U.S. 467, 494, 111 S.Ct. 1454 (1991).  Courts excused an abuse

6    of the writ only if:  (1) the applicant could establish cause and prejudice--i.e., that "some objective

7    factor external to the defense impeded counsel's efforts" to raise the claim earlier and that "actual

8    prejudice result[ed] from the errors of which he complain[ed,]"  id. at 493-94, 111 S.Ct. 1454

9    (internal quotation marks and citations omitted); or (2) the applicant could demonstrate that "a

10   fundamental miscarriage of justice would result from a failure to entertain the claim."  Id.   The

11   AEDPA, however, replaced the abuse-of-the writ doctrine articulated in McCleskey.

12        Under AEDPA's new "gate-keeping" provisions, an applicant seeking to file a second or

13   successive petition must obtain from the appropriate court of appeals an order authorizing the district

14   court to consider the application.  28 U.S.C. § 2244(b)(3)(A).   By filing a second and successive

15   petition raising the same issue without first obtaining permission of the Court, Petitioner has violated

16   this fundamental gate-keeping provision of the AEDPA.  On this ground alone, the petition must be

17   dismissed.

18        However, additionally, because the issue raised in this petition has already been addressed

19   and rejected on the merits by this Court, that prior order is res judicata in this case and binding on

20   this Court.  Res judicata, or claim preclusion, as it is commonly known, bars re-litigation in a

21   subsequent action of any claims that were or could have been raised in the earlier action.  Federated

22   Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  The res judicata doctrine applies when, as

23   here, there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) an identity or

24   privity between the parties.  Western Radio Services, Inc. v. Glickman, 123 F.3d 1189, 1192 (9th Cir.

25   1997).  Issue preclusion bars re-litigation of issues adjudicated and essential to the final judgment of

26   earlier litigation between the parties.  Dodd v. Hood River County, 136 F.3d 1219, 1224-1225 (9th

27   Cir. 1999); Garrett v. City and County of San Francisco, 818 F.2d 1515, 1520 (9th Cir. 1987).  The

28   purpose behind both issue preclusion and claim preclusion is to prevent multiple lawsuits and to

1   enable parties to rely on the finality of adjudications.  <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980).

2   Here, the issue of whether Petitioner's aggravated sentence was legal and whether the gun-

3   use enhancement was legal have been addressed on the merits adversely to Petitioner in an earlier

4   fedeal habeas case.  Because the issue is now res judicata, this Court cannot address those issues in

5   this new federal petition.

6   **RECOMMENDATION**

7   Accordingly, for all of these reasons, the Court HEREBY RECOMMENDS that the petition

8   for writ of habeas corpus (Doc. 1), be DISMISSED for violation of the AEDPA's one-year limitation

9   period, as a successive petition, and on grounds of res judicata.

10   This Findings and Recommendation is submitted to the United States District Court Judge

11   assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

12   Local Rules of Practice for the United States District Court, Eastern District of California.  Within

13   fifteen (15) days after being served with a copy, any party may file written objections with the court

14   and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

15   Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within

16   ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will

17   then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

18   advised that failure to file objections within the specified time may waive the right to appeal the

19   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

20

21   IT IS SO ORDERED.

22   **Dated:    September 8, 2009**              **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28